UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORGE CARY, individually and as the personal representative of the Estate of LILIAN CARY,<br>            Plaintiffs,<br><br>v.<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC. d/b/a NEW ENGLAND COMPOUNDING CENTER, *et al.*,<br><br>            Defendants. | LEAVE TO FILE GRANTED<br>MARCH 5, 2013<br><br>CIVIL ACTION<br>No. 13-cv-10228-FDS |
| ROBERT SCHRODER and MARGARET SCHRODER,<br><br>            Plaintiffs,<br><br>v.<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC. d/b/a NEW ENGLAND COMPOUNDING CENTER, *et al.*,<br><br>            Defendants. | CIVIL ACTION<br>No. 13-cv-10227-FDS |

1

| | |
|---|---|
| LEONARD SHAFFER and KAREN SHAFFER,<br>Plaintiffs,<br><br>v.<br><br>BARRY J. CADDEN, GREGORY CONIGLIARO, LISA C. CADDEN, GLENN A. CHIN, ARL BIOHARMA, INC. D/B/A ANALYTICAL RESEARCH LABORATORIES, AMERIDOSE, LLC, MEDICAL SALES MANAGEMENT, INC. AND GDC PROPERTIES MANAGEMENT, LLC,<br><br>Defendants. | CIVIL ACTION<br>No. 13-cv-10226-FDS |
| EDWARD ADAMS,<br><br>Plaintiff,<br><br>v.<br><br>BARRY J. CADDEN, *et al.*,<br><br>Defendants. | CIVIL ACTION<br>No. 13-cv-10229-FDS |

## AMERIDOSE LLC'S CONSOLIDATED REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTIONS FOR WITHDRAWAL OF THE REFERENCE

### INTRODUCTION

Plaintiffs urge this Court to deny Ameridose LLC's Motion to Withdraw the Reference (docket #1) on three grounds: (1) the right to a jury trial does not require withdrawal of the reference until a trial is likely; (2) withdrawal of the reference is contrary to the goals of expediting the bankruptcy process and maintaining uniformity of bankruptcy administration; and (3) the motions constitute forum shopping. *See*, Plaintiffs' Memorandum at p. 4. In addition,

Plaintiffs argue that two of these cases are not sufficiently "related to" the bankruptcy case of New England Compounding Pharmacy, Inc. to confer jurisdiction on this court. *See*, Plaintiffs Memorandum at p. 12. None of these arguments withstands scrutiny in the context of a bankruptcy case caused by personal injury tort or wrongful death cases. When the Motions to Withdraw the Reference are evaluated in context, it becomes obvious that withdrawal of the reference is consistent with the language and intent of §157(b)(5) as revealed by legislative history, case law, and commentary. Consequently, this Court should overrule the Plaintiffs' Opposition and issue an order withdrawing the reference as to all four cases.

## PERSONAL INJURY AND WRONGFUL DEATH CLAIMS ARE SUBJECT TO UNIQUE CONSIDERATIONS IN BANKRUPTCY CASES

Plaintiff argues that Ameridose is making a jurisdictional end run, and forum shopping. (Plaintiff's Memorandum at 4). They fail to recognize that between the earlier remand proceedings and today there was a very significant procedural event that changes the jurisdictional analysis—NECC filed for bankruptcy protection. Once that happened, the jurisdictional provisions of the U.S. Code related to bankruptcy cases became applicable, including the provisions specifically related to personal injury and wrongful death actions..

Congress used mandatory language in 28 U.S.C. §157(b)(5) to dictate that personal injury tort and wrongful death claims should be transferred to the district court in the district in which the bankruptcy case is pending or the district court in which the claim arose. *See,* 28 U.S.C. §157(b)(5) ("The district court *shall* order that personal injury tort and wrongful death claims *shall* be tried in the district court in which the bankruptcy case is pending, or in the district court in which the claim arose, as determined by the district court in which the bankruptcy case is pending.") (Emphasis added). However, courts analyzing the disposition of personal injury and wrongful death claims have found that motions under §157(b)(5) implicate an abstention

analysis.[1] *See In re Pan American Corp.*, 950 F.2d 839, 844-45 (2nd Cir. 1991); *In re Twin Laboratories, Inc.*, 300 B.R. 836, 840 (S.D.N.Y. 2003). Courts analyzing the district court's discretionary withdrawal of the reference or abstention with respect to personal injury tort cases have consistently found that transfer to the district court should be the rule, and abstention the exception. *See e.g., In re Pan American Corp.*, 950 F.2d 839, 845 (2nd Cir. 1991); *In re Twin Laboratories, Inc.*, 300 B.R. 836, 841 (S.D.N.Y. 2003).

The U.S. Court of Appeals for the First Circuit has recognized that:

> "Significantly, personal injury tort and wrongful death claims are afforded special status under the bankruptcy laws. Several express exceptions address and limit the authority of the bankruptcy court over such claims. *See, e.g.*, 28 U.S.C. § 157(b)(2)(B), (O), and § 157(b)(5).

*Adams v. Cumberland Farms, Inc.*, 86 F.3d 1146 (1st Cir. 1996) (unreported). The effect of that special status accorded to personal injury and wrongful death claims in the §157(b) (5) and abstention context was described by the U.S. Court of Appeals for the Second Circuit:

> A motion under section 157(b)(5), therefore, requires an abstention analysis. This analysis, however, is colored by the Bankruptcy Code's treatment of personal injury *845 claims against debtors. First, as already discussed above, the language of section 157(b)(5) appears to be mandatory, although it clearly has not been so construed. Second, section 157(b) (4) provides that "[n]on-core proceedings under §157(b) (2)(B) of title 28 [liquidation of personal injury tort or wrongful death cases], shall not be subject to the mandatory abstention provision of Section 1334(c)(2)." 28 U.S.C. §157(b)(4). Even though personal injury cases are not excepted from the Code's permissive abstention provision, we agree with the leading commentator that "the district court, if it elects to abstain and have the claim liquidated in state court, may be contravening the legislative history." 1 L. King, Collier on Bankruptcy ¶ 3.01[3][b], at 3—82 (15th ed. 1991) (citing 130 Cong. Rec. S7621 (daily ed. June 19, 1984) (remarks of Senator DeConcini)); *see also* R. Aaron, Bankruptcy Law Fundamentals § 3.03 [2], at 3—42 (1991) ("[t]he apparent intent [of §157(b)(4)] is that these personal injury claims should not be returned to the state courts for trial").

---

[1] The Plaintiffs in this case do not use the word "abstention" in their Memorandum in Opposition, and they have not filed a formal abstention motion. Nevertheless, the relief envisioned in their Memorandum, leaving the cases to pend in the Bankruptcy Court or to be remanded to state court by the bankruptcy judge, amounts to this Court abstaining from exercising its jurisdiction.

4

> Finally, the manifest purpose of section 157(b)(5) was "to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'" *Piccinin*, 788 F.2d at 1011 (quoting 130 Cong. Rec. H7492 (June 29, 1984) (remarks of Congressman Kastenmeier), *reprinted in* 1984 U.S. Code Cong. & Admin. News at 579). This is consistent with Congress' desire to eliminate the confusion, delay and inefficiencies associated with the Bankruptcy Act's limited jurisdictional scheme.

*In re Pan American Corp.*, 950 F.2d 839, 844-45 (2nd Cir. 1991).

The U.S. Court of Appeals for the Fourth Circuit analyzed the special nature of personal injury tort and wrongful death cases and the district court's power to centralize such cases and eliminate a multiplicity of forums:

> Section 157(b)(5), however, expressly confers on the district court sitting in bankruptcy and having jurisdiction of the bankruptcy proceedings the power to fix the venue of any tort case against the debtor pending in other districts. The purpose of this latter statute was, as Congressman Kastenmeier declared, to centralize the administration of the estate and to eliminate the "multiplicity of forums for the adjudication of parts of a bankruptcy case." 130 Cong. Rec. H 7492, June 29, 1984, *reprinted in* 1984 U.S. Code Cong. & Admn. News at 579. That purpose would be thwarted and the plain language of section 157(b)(5) nullified if the power of the district court sitting in bankruptcy to fix the venue for tort claims against a debtor was to be preempted by the provisions of section 1412. We do not believe this to have been the intention of Congress in enacting the two statutes. Section 157(b)(5) was drafted to cover the procedure in connection with a special group of cases, to wit, personal injury tort claims against a debtor in Chapter 11 proceedings wherever pending and in that connection the section is supreme.

*A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986).

The statutory framework described in these cases is sharply at odds with the case law cited by Plaintiffs in their Memorandum for the proposition that withdrawal of the reference is inappropriate or premature in this case. *See* Plaintiff's Memorandum, pp. 8-11. The reason for the different perspective is that Plaintiffs have not cited any cases arising in the personal injury tort or wrongful death context. They have also not cited a single case in which there was an

5

established multi-district litigation. Consequently, although Plaintiffs cite twelve cases on pages 8 through 11 of their Memorandum,[2] none of those cases fit the procedural context of this case.

In this case the litigation of multiple cases similar to Plaintiffs, in different forums, under different pre-trial schedules, with separate discovery timetables, would consume an unfair amount of the limited assets available to creditors, nearly all of whom are plaintiffs in personal injury tort or wrongful death cases. Like *Pan Am, A.H. Robbins,* and *Twin Laboratories,* this case requires the centralization of non-core proceedings in the District Court.

The danger of the alternative ruling sought by Plaintiffs was accurately summarized by the U.S. District Court for the Southern District of New York:

> In short, Congress, recognizing that the unpredictable and substantial verdicts that are often produced in personal injury tort and wrongful death claims could have potentially deleterious effects on a debtor's estate—particularly when, because of the automatic stay provisions of the Bankruptcy Code, a debtor-defendant may not have participated in *181 the underlying trial—concluded that, in non-core proceedings such as the one at bar, the mandatory abstention provision of §1334(c)(2) should not apply. *See In re Pan American Corp.* 950 F.2d 839, 845 (2d Cir. 1991).

*Beck v. Victor Equipment Co., Inc.,* 277 B.R. 179 (S.D.N.Y. 2002).

Consequently, the Plaintiffs' are wrong in their argument that Ameridose "gets it backwards" in arguing that withdrawal of the reference promotes efficient use of judicial and

---

[2] Plaintiffs cite *Container Recycling Alliance v. Lassmen,* 359 B.R. 358 (D. Mass. 2007), a case involving a commercial landlord/tenant issue in which the reference was in fact withdrawn. Plaintiffs also cite *United States v. Kaplan,* 146 B.R. 500 (D. Mass. 1992) (a tax dispute with the I.R.S.); *In re Onyx Motor Car Corp.,* 116 B.R. 89 (S.D. Ohio 1990) (dispute over competing priority of security interests in proceeds of sale); *Holland American Ins. Co. v. Succession of Roy,* 777 F.2d 992 (5th Cir. 1985) (interpleader action for insurance proceeds); *In re Healthcentral.com,* 504 F.3d 775 (9th Cir. 2007) (dispute over preferential payments to computer software maintenance company); *In re Formica Corp.,* 305 B.R. 147 (S.D.N.Y. 2004) (former CFO's employment claims); *In re Kenai Corp.,* 136 B.R. 59, (S.D.N.Y. 1992) (dispute over D&O liability policy coverage); *In re Adelphi Institute, Inc.,* 112 B.R. 534 (S.D.N.Y. 1990) (RICO claims against former directors and officers); *Rosenberg v. Harry A. Bookstein,* 479 B.R. 584 (D. Nev. 2012) (fraudulent conveyance case); *In re Fuda Indep. Co-op,* 130 B.R. 967 (Bankr. D. Minn. 1991) (Farmers' fraudulent conveyance case against agricultural co-op); *In re Winstar Communications, Inc.,* 321 B.R. 761 (D. Del. 2005) (preference case); and *In re Heller Ehrman LLP,* 464 B.R. 348 (N.D. Cal. 2011) (fraudulent conveyance case against lawyers taking clients to new firms).

legal resources. (Plaintiffs' Memorandum, p. 11) . If the NECC bankruptcy case is to produce any reasonable recovery for aggrieved plaintiffs, it will be because litigation procedures and their attendant expenses are controlled and minimized. Doing so will keep the focus on creating a pool of assets to compensate plaintiffs, with a minimum of litigation procedure. Centralizing the non-core cases in this court will meaningfully streamline discovery and pre-trial procedures, and will allow this Court and the Bankruptcy Court to keep the focus on procedures to compensate plaintiffs under a bankruptcy reorganization plan. There will be hundreds of cases in the MDL. Does it make any practical or legal sense for one judge to manage all of those, but a separate judge to manage just four?

## "RELATED TO" JURISDICTION

Finally, Plaintiffs devote a portion of their memorandum to the argument that the Adams and Schaffer cases are insufficiently "related to" the NECC bankruptcy case to confer jurisdiction on this court. Analysis of this claim under the legal standard for "related to" jurisdiction demonstrates that this argument is without merit.

"Related to" proceedings are those that potentially have some effect on the bankruptcy estate. *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 68 (1st Cir. 2002); *White v. Kubotek*, 2012 W.L. 47533310 (D. Mass. 2012). Litigation of two cases involving personal injury torts, without the participation of the Debtor (who is alleged to have manufactured the products causing the injuries) could produce exactly the kind of deleterious effects on the estate predicted by the court in the case of *Beck v. Victor Equip. Co., Inc.*, 272 B.R. 179, 180-81 (S.D.N.Y. 2002). Moreover, it is not only the potential for "unpredictable and substantial verdicts" as the *Beck* court foresaw, that creates the potential to affect the Debtor's estate. It is also the expense of the litigation itself, the risk that important details get missed in a perfect

storm of litigation in multiple venues, the impact of collateral estoppel issues, and a host of other risks of multiple trials proceeding in disparate forums that could sharply impact the recovery for other plaintiffs and diminish the Debtor's estate.

## CONCLUSION

The bankruptcy case encompasses all of the plaintiffs who have been injured, not just these four cases. Courts dealing with similar cases involving multiple personal injury tort and wrongful death cases are uniform in the denial of abstention motions and in granting motions to transfer personal injury tort and wrongful death cases to the district court pursuant to 28 U.S.C. §157(b)(5).

Fashioning a reasonable remedy for the plaintiffs in these cases depends on consolidation of the personal injury and wrongful death cases in the District Court. It will also require coordination between the District Court and the Bankruptcy Court, and extensive use of the bankruptcy plan and distribution process to compensate all plaintiffs fairly. These goals are not served by remand or abstention. Ameridose LLC respectfully requests that this Court overrule the Plaintiffs' opposition, and withdraw the reference in these cases.

Movant,
Ameridose, LLC,
By its Attorneys

*s/ Scott J. Tucker*
Scott J. Tucker (BBO # 503940)
Matthew E. Mantalos (BBO # 669404)
Tucker, Saltzman & Dyer, LLP
100 Franklin Street
Boston, MA 02110
Tel:     617.986-6220
Fax:    617.986-6229
E-mail:   tucker@tsd-lawfirm.com
              mantalos@tsd-lawfirm.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been filed with the Clerk of the Court on March 5, 2013 using the ECF system that sent notification of this filing to all ECF—registered counsel of record via e-mail generated by the Court's ECF system.

*s/ Scott J. Tucker*
*Attorney for Defendant Ameridose, LLC*
